UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHANIE ALEXA SIMKO,

    Plaintiff,

v.                                          Case No: 6:16-cv-246-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## **OPINION AND ORDER**

Plaintiff, Stephanie Alexa Simko, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a Joint Memorandum (Doc. 19) setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for SSI on December 22, 2011, alleging a disability onset date of October 2, 2011. (Tr. 212). Plaintiff's application was denied initially on April 25, 2012, and upon reconsideration on August 10, 2012. (Tr. 56, 96). Plaintiff requested a hearing and a hearing was scheduled for September 9, 2013, at the Orlando ODAR. (Tr. 114). On September 9, 2013, Plaintiff's hearing was postponed, and subsequently rescheduled for March 13, 2014. (Tr. 182). On March 13, 2014, a hearing was held before Administrative Law Judge Janet Mahon ("the ALJ"). (Tr. 25-55). On June 10, 2014, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 9-24). Plaintiff requested review of this decision and the Appeals Council denied Plaintiff's request on December 20, 2015. (Tr. 1-3). Plaintiff initiated the instant action by Complaint (Doc. 1) on February 12, 2016. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 18, 2011, her application date. (Tr. 11). At step two, the ALJ found that Plaintiff had the following severe impairments: seizures, paresthesia, and obesity. (Tr. 11). At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12).

Before proceeding to step four, the ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to

> lift or carry 20 lbs. occasionally and 10 lbs. frequently with the dominant hand and 10 lbs. occasionally and less than 10 lbs. with the left hand, to stand for up to 4 hours in an 8-hour workday, to walk for up to 2 hours in an 9-hour workday, and to sit for up to 6 hours in an 8-hour workday. The claimant also can never climb ladders, ropes, or scaffolds; can occasionally balance; can occasionally reach and handle with the left hand and shoulder; must avoid concentrated exposure to fumes, odors, gases, and poor ventilation; and must avoid even moderate exposure to hazards.

(Tr. 13). At step four, the ALJ found that Plaintiff was capable of returning to her past relevant work as a a marketing recruiter/interviewer, as this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 15). The ALJ concluded that Plaintiff was not under a disability at any since the application was filed October 18, 2011. (Tr. 16).

**II.    Analysis**

The Joint Memorandum sets forth a single issue: "[w]hether the ALJ failed to base the claimant's RFC upon substantial evidence where the ALJ improperly accorded 'great weight' to the August 10, 2012 opinion of Dr. Charles E. Moore (Exh. 4A), a nonexamining state agency physician, and Dr. Moore did not review later-dated evidence that showed the claimant's worsening medical condition." (Doc. 19 p. 14).

Plaintiff argues that the ALJ erred by improperly according great weight to the August 10, 2012 opinion of Dr. Moore's opinion despite the fact that Dr. Moore did not review later-dated evidence that showed Plaintiff's medical condition was worsening. (Doc. 19 p. 14-17). In response, Defendant argues that Plaintiff's argument has no merit because the ALJ considered all of the records, and it is the ALJ's responsibility to determine a claimant's RFC. (Doc. 19 p. 18).

The record shows that Dr. Moore reviewed Plaintiff's medical records on August 10, 2012. (Tr. 80-85). After reviewing the record, Dr. Moore opined that Plaintiff could lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently, stand about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and his ability to push and/or pull was limited in left upper extremities. (Tr. 82). Dr. Moore explained that his exertional limitation findings as follows:

> Despite negative XR L shoulder 6/25/12 there is objective evidence of considerable pain with manipulation/elevation of the shoulder; as well as consistent findings of mild degree (4/5) of L-sided hemiplegia. Gait appears normal, although also described as 'waddling,' with a mild degree of weakness noted affecting the LLE.

(Tr. 82). Dr. Moore found that Plaintiff could frequently climb ramps/stairs; never climb ladders/ropes/scaffolds; occasionally balance; and frequently stoop, kneel, and crouch. (Tr. 82). Dr. Moore found that Plaintiff was limited in her ability to reach "left in front and/or laterally" and "left overhead." (Tr. 83). Dr. Moore found that Plaintiff was limited in her handling on the left side. (Tr. 83). Dr. Moore explained his manipulative limitation findings as follows: "Frequently. Mild left hemiparesis as noted above. Grip strength 5/5, RUE 5/5 strength, LUE 4/5. Coordination is nml. Notes she frequently drops objects grasped with L hand." (Tr. 83).

In the Joint Memorandum, Plaintiff notes that much additional medical and nonmedical evidence was submitted into the record after Dr. Moore offered his opinion. For example, Plaintiff notes that after Dr. Moore offered his opinion, on September 27, 2012, a cervical MRI revealed that Plaintiff had a herniated disc and a radial tear at C2-3, as well as moderate to severe left neural foraminal stenosis and moderate right neural foraminal stenosis at C4-5. (Tr. 640-641).

In addition, later treatment notes from Dr. Fernando Gonzalez-Portillo, Plaintiff's treating neurologist, indicate that Plaintiff's left-sided paresthesias and weakness had worsened. For

example, on October 2, 2012, Dr. Gonzales-Portillo performed a bilateral hand neurological study, which was *abnormal* and revealed left ulnar motor axonal neuropathy. (Tr. 644). On July 16, 2013, Dr. Gonzales-Portillo noted her daily left side weakness and pain with cramping of her left leg and left hand. (Tr. 611). On September 6, 2013, Dr. Gonzales-Portillo again noted these problems. (Tr. 613). Dr. Karenna Senors, Plaintiff's primary care physician, noted on October 28, 2013, that Plaintiff was now experiencing right hand weakness which caused her to drop items, and she wanted to refer Plaintiff for another neurology consult. (Tr. 628-629). On February 26, 2014, Dr. Gonzales-Portillo noted that "she is getting worse with the weakness," and that Plaintiff was now reporting both musculoskeletal and migraine headaches with dizziness, blurry vision and double vision. (Tr. 647-648). Plaintiff notes that the evidence showing worsening left upper extremity weakness with supporting c-spine MRI and hand neurological studies, developing right upper extremity weakness, and headaches were not even considered by Dr. Moore.

Finally, Plaintiff notes that the nonmedical evidence after the date of Dr. Moore's opinion about Plaintiff's worsening condition is also consistent with the later medical evidence. For example, in her Disability Report-Appeal, dated August 23, 2012, Plaintiff stated that her left hand was "useless" and that she had more pain in her left hand, left shoulder, and left foot. (Tr. 327). At her hearing on March 13, 2014, Plaintiff testified that she could not hold onto anything with her left hand; that her left shoulder hurt when she raised her arm and she could not reach overhead with her left arm; that she wore a brace on her left leg most of the time when she went out, her left leg drags, her gait is off, and she gets off balance; and that she could not even hold a book or an iPad with her left hand. (Tr. 35-39). Plaintiff also points to the statement from her husband on July 1, 2012, that she was unable to use her left hand and arm and had debilitating pain in her left foot, left arm, left shoulder, and left foot. (Tr. 318).

Here, although Dr. Moore's opinion was offered before significant medical evidence was entered into the record, the Court finds no error in the ALJ's decision to accord great weight to Dr. Moore's opinion. In his opinion, Dr. Moore set forth multiple limitation findings concerning Plaintiff's left hand and upper extremities, an opinion entirely consistent with the latest-dated medical evidence in the record, i.e., Dr. Gonzalez-Portillo's finding on February 26, 2014, that Plaintiff's examination revealed worsening, but still "mild left arm weakness." (Tr. 648). Thus, it is not the case that Dr. Moore's opinion is at odds with the later entered evidence. The ALJ provided that she reviewed the entire record, including the evidence submitted after Dr. Moore offered his opinion, and determined that the opinion was "supported by the evidence of record and is not contradicted by other opinions from an acceptable medical source." (Tr. 15).

The ALJ's review of the entire record, including the subsequent medical evidence, is made apparent by the fact that the ALJ assessed an RFC more limited than Dr. Moore opined. Specifically, the ALJ found that Plaintiff was limited to lifting 10 pounds or less with her left hand, a limitation that Dr. Moore did not include in his opinion. (Tr. 13, 82). In addition, while Dr. Moore found that Plaintiff could *frequently* perform manipulative functions with her left upper extremity, the ALJ found Plaintiff could only *occasionally* reach and handle with her left hand and shoulder. (Tr. 13, 83). Thus, the ALJ did not unconditionally accept the opinion of Dr. Moore without regard to the rest of the opinion.

The fact that Plaintiff and her husband made statements that her left hand and arm were more debilitating than Dr. Moore opined does not make the ALJ's decision to accord great weight to Dr. Moore's opinion erroneous. The ALJ evaluated Plaintiff's subjective allegations pursuant to 20 C.F.R. § 416.929(a) and (b) and found that Plaintiff's alleged symptoms were not entirely credible. While the ALJ did not directly address the statement of her husband, the ALJ's finding

that Plaintiff's subjective allegations were not entirely credible was an implied rejection of her husband's statement. *See Clyburn v. Comm'r of Soc. Sec. Admin.*, 555 F. App'x 892, 894 (11th Cir. 2014) (finding the ALJ's explicit rejection of the claimant's testimony constituted an implied rejection of her sister's statements).

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 27, 2017.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties